IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**SUZANNE M.,**[1]

    Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

_____

Civ. No. 1:22-cv-00492-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Suzanne M. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## BACKGROUND

On April 17, 2019, plaintiff filed an application for supplemental security income, alleging disability beginning on February 18, 2017. Tr. 15. The application was denied on September 24, 2019, and then again upon reconsideration on May 19,

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

2020. *Id.* At the plaintiff's request, a telephone hearing was held before an Administrative Law Judge ("ALJ") on March 16, 2021. *Id.* During the hearing, plaintiff amended her onset date to April 17, 2019. Tr. 15. On April 21, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 12. On April 27, 2021, plaintiff requested that the Appeals Council review the ALJ's decision. Tr. 164. On February 7, 2022, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other

work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date, April 17, 2019. Tr. 17.

At step two, the ALJ found that plaintiff had the following severe impairments through her date last insured: Osteoarthritis of the left knee and hip and obesity. Tr. 17.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19. The ALJ found plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: she could occasionally climb ramps and stairs, but never ropes, ladders, or scaffolds; she could frequently balance, stoop, and crouch; and never crawl. Tr. 20.

She must avoid exposure to vibration or hazards, such as dangerous machinery and unprotected heights. *Id.*

At step four, the ALJ found plaintiff was capable of performing her past relevant work as she actually performed it. Tr. 26.

Accordingly, at step four, the ALJ found that plaintiff was not disabled as defined by the Social Securities Act since April 17, 2019. Tr. 26. The ALJ did not proceed to step five. Tr. 15-26.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir.

2006).  Finally, a court may not reverse an ALJ's decision on account of an error that is harmless.  *Id.* at 1055–56.  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly dismissing plaintiff's allegations for less than clear and convincing reasons and (2) finding that plaintiff can perform her past work as a home attendant as actually performed.

### I. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony.  An ALJ must perform a two-stage analysis to determine whether a claimant's testimony is credible.  20 C.F.R. § 416.929.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms.  *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and

what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.* "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

Here, plaintiff testified that she stopped working as a caregiver in the third week of February 2017 when her client moved to a nursing home. Tr. 21. She testified that she subsequently worked in a billing position a few months later part-time, "a few days for a few hours." Tr. 41.

Plaintiff wrote in her Work History report that the heaviest she had to lift at work as a caretaker was "[l]ess than 10 lbs." Tr. 224. However, at the hearing, plaintiff testified that she "helped [her client] with ambulation, but as far as chores, I did not have to lift heavy things." Tr. 38. Plaintiff explained that helping the client with ambulation became more common as the client's health deteriorated, noting that "[helping him with ambulation] was the job . . . throughout the job." Tr. 39. Plaintiff also testified that it was her job to keep him from falling and to help him up if he fell and that she would take on her client's weight if he started to fall. Tr. 39-40.

Plaintiff reported significant knee and hip pain over time. Plaintiff had arthroscopic surgery on her left knee in 2016. Tr. 303, 310. After her surgery, plaintiff continued to have knee and hip pain. Plaintiff made numerous trips to Urgent Care to help alleviate pain. *See, e.g.,* Tr. 633, 630, 639. Plaintiff's gait changed from "normal" to "antalgic" to "compensated" to "antalgic," to "antalgic and limp" over time. Tr. 576, 521, 631, 588, 593. Medical reports repeatedly showed "no acute distress." *See, e.g.,* Tr. 309, 370, 522, 575. Plaintiff reported that the injections were both helpful and unhelpful at different times. *See, e.g.,* Tr. 520-21, 590, 611, 614. X-rays showed "bone-on-bone arthrosis" bilaterally in her knee with "mild" lateral tibial subluxation. Tr. 597. X-rays of her left hip showed evidence of "end stage" osteoarthritis and possible avascular necrosis. Tr. 598.

Additionally, Linford Beachy, M.D., characterized her left knee as showing "severe DJD" with "possible avascular necrosis." Tr. 614. Dr. Wieking recommended total knee replacement. Tr. 597. PA Shelton recommended hip replacement. Tr. 596. However, plaintiff is limited by her obesity, and she cannot undergo surgery until she loses over 100 pounds. Tr. 639. Additionally, plaintiff reported falling several times. *See, e.g.,* Tr. 372, 581, 633, 639. Plaintiff was prescribed a cane. Tr. 613.

Plaintiff wrote in her functioning report that she had "no ability to lift, stand, or sit for any length of time." TR. 260. Plaintiff wrote on her pain questionnaire that her joint pain lasted "hours- days." TR. 256. Plaintiff wrote in her Adult Function Report that her impairments limit her ability to lift, squat, bend, stand, reach, walk,

sit, kneel, climb stairs, remember, concentrate, and understand. Tr. 219. She can rarely lift more than 20 pounds, never squat or kneel, and rarely bend, stand and reach. Tr. 219. She can walk one or two blocks before needing to rest. Tr. 219. She could stand or walk for zero to thirty minutes before pain occurred. Tr. 219. She testified that she needed to lie down for at least half of an eight-hour day, and if she did not lie down, she would be more sore the next day. Tr. 52.

Plaintiff testified that she spends her days usually watching T.V. Tr. 264. Plaintiff noted that she can cook "simple things," like "soup," "sandwiches," and "frozen things." Tr. 262. She spends about 20 minutes preparing food "every few days." Tr. 262, 216. Plaintiff testified she can no longer garden. Tr. 216. However, plaintiff noted she can "pull a few weeds." Tr. 215. Plaintiff lives with her daughter. Tr. 263. She does not pay bills. Tr. 263. In her second Functioning Report, she noted that she needs help to bathe and has difficulty getting up from the toilet due to pain. Tr. 216. She does laundry and vacuums two times per month. Tr. 262. She can drive but rarely drives. Tr. 217. She runs errands, such as going to the grocery store and the drive-up window at the bank, about once a month. Tr. 43, 263. She only goes outside of her house two or three times a week. Tr. 216, 263. Plaintiff told her counselor that she wanted to volunteer in a kitchen at a church. Tr. 644.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ found that plaintiff's testimony concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other

evidence in the record for several reasons. First, the ALJ found that plaintiff had given inconsistent statements concerning the effectiveness of her treatments. In particular, the ALJ noted inconsistencies in plaintiff's statements concerning steroid injections' effect on the knee and hip. Tr. 22. For example, the ALJ pointed to August 2020, when plaintiff stated the injections were unhelpful, but she was still "very unhappy" when she was referred to an orthopedist instead of receiving more injections. Tr. 22.

Second, the ALJ noted inconsistencies where the plaintiff's activity level was inconsistent with her claimed limitations. The ALJ noted that "Plaintiff alleges that she cannot perform any exertional or postural activities, but in her functioning report she describes independence in performing most activities of daily living including cleaning, cooking, driving, and maintaining personal care." Tr. 24. The ALJ noted that plaintiff wanted to volunteer in a kitchen, which "typically involves standing and walking," thus "[p]erhaps her hip and knee pain have improved and she no longer requires the use of a cane in order to consider such work." Tr. 23.

The ALJ found that although the combination of musculoskeletal pain and obesity can have severe complications, the record "does not document evidence of end organ damage to any major organs" or evidence of major joint dysfunction affecting plaintiff's ability to ambulate. Tr. 24. The ALJ also determined that the record does not contain evidence of ongoing physical therapy or treatment recommendations that are not conservative in nature. Tr. 24. The ALJ noted that plaintiff was advised to engage in "aggressive" strengthening and stretching exercises and to lose weight. Tr.

22-23. The ALJ also noted that there is no evidence of planned surgery. Tr. 23. The ALJ found that plaintiff responded to conservative treatment. Tr. 22-25.

The Court finds that the ALJ errored in discounting plaintiff's subjective symptoms. First, plaintiff's minimal functional ability is not inconsistent with the pain that plaintiff described in her testimony. The ALJ found that "she is able to live independently, grocery shop, drive, attend to her personal care, prepare her own meals, vacuum floors, wash dishes, manage her finances, watch television, paint, crochet, and read on occasion, which is not indicative of more than mild limitations in daily functioning." Tr. 19. However, the amount of involvement plaintiff described in these activities was minimal. Additionally, the ALJ's finding that plaintiff gave inconsistent testimony about the effectiveness of injections was not clear and convincing. The ALJ did not take into account different types of steroid injections or note that each had varying degrees of effectiveness.

The Court concludes that the ALJ failed to provide sufficient clear and convincing reasons for discounting plaintiff's testimony and further concludes that the error was harmful.

## II. Past Relevant Work

Plaintiff contends that the ALJ erred in holding she could complete her past work as performed. To determine whether a claimant can perform her past relevant work, the ALJ must determine whether the claimant retains the residual functional capacity (RFC) to perform the physical and mental demands of past work. SSR 82-61. A claimant will be found "not disabled" when it is determined she retains the

Page 10 – OPINION & ORDER

RFC to perform: (1) the claimant retains the capacity to perform the particular functional demands and job duties as she actually performed it; or (2) the claimant retains the capacity to perform the functional demands of job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. *See also Pinto*, 249 F.3d at 845.

Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: (1) a properly completed vocational report and (2) the claimant's own testimony. SSR 82-61; SSR 82-41. *See also Kam Har Lee v. Asture*, 695 F.Supp. 2d 1033, 1041 (9th Cir. 2010). "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." SSR 82-62.

Although the burden of proof lies with the claimant to show that they cannot perform past relevant work, the ALJ must make requisite factual findings to support their conclusion. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). Whether the claimant retains the RFC to perform past work has "far-reaching implications" and "must be developed and explained fully" in the decision. SSR 82-62. "Since this is such an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62.

Plaintiff submitted a Functioning Report where she wrote that she was caregiver. Tr. 222. On her Functioning Report, she wrote that she walked one hour,

Page 11 – OPINION & ORDER

stood zero hours, sat all hours, climbed and reached zero hours, and stooped for 10 minutes each day at this job. Tr. 224. She wrote that she "Assisted with ambulation the law few months." Tr 224. She testified that the heaviest weight she lifted was less than 10 pounds and frequently lifted less than 10 pounds. Tr. 224.

During oral testimony, plaintiff answered questions about her job as a caregiver. The ALJ asked her, "[W]hat was the heaviest that you lifted and carried in that position?" Tr. 38. Plaintiff answered, "I helped him with his ambulation, but as far as chores, I did not have to lift and carry heavy things." Tr. 38. When asked when plaintiff started having to help with ambulation, plaintiff stated, "I helped him throughout the job; it got more and more as he went . . . as they get worse, that's how it goes." Tr. 39. The ALJ then asked, "[E]xactly how did you help him with ambulation? You weren't like picking him up and carrying him on your back, were you? Tr. 39. Plaintiff responded, "No, no, an arm to assist him to get out of the chair or to walk with him and to help him with his -- if he started to fall, I would help to keep him from falling." Tr. 40. The ALJ responded, "So you were there basically as kind of somebody he would hold on to as he'd walk?" Tr. 40. Plaintiff responded, "Yeah. Yeah." Tr. 40. The ALJ added, "To kind of steady him; so you weren't lifting him in any way, correct?" Tr. 40. Plaintiff responded no. Tr 40. Plaintiff's counsel asked, "If [the client] was unable to hold himself, [would] you have to help him up with -- you know, actually taking on his weight? Tr. 40. Plaintiff responded, "No. No -- just if he tried to fall, I would take on his weight." Tr. 40. Plaintiff testified that

Page 12 – OPINION & ORDER

the client fell more often as his disease progressed, and that the client "[W]as getting progressively worse, so I had to help him more." Tr. 40-41.

During Oral Testimony, the Vocational Expert ("VE") testified that the work plaintiff performed was best be described as a Home Attendant according to the Dictionary of Occupational Titles, DOT code 354.377-014. Tr. 55. Home Attendant is classified as a medium exertional level in the DOT. Tr. 55. The VE stated that, as performed in exhibits, the job consists of sitting between zero and all hours, lifting ten pounds maximum and less than ten pounds frequently. Tr. 55-56. The VE concluded that the work was sedentary as performed.[2] Tr. 56. Plaintiff's counsel asked the VE what "level of work typically . . . is required to basically catch their patient or if they fall? Would that still be within the sedentary level?" Tr. 60-61. The VE responded, "The job of home attendant, as generally performed, is medium-level work, lifting 50 pounds occasionally and 25 pounds frequently." Tr. 61. Counsel then asked, "would someone need -- be able to do the -- that job of that home attendant if they were required to use a cane and all times while standing and walking, which the result of that meaning that they would -- only would have one upper extremity free to lift and carry things at all times? Would a person like that be able to do the home attendant work?" Tr. 61. The VE responded, "No, I don't believe so." Tr. 61.

The ALJ found plaintiff could perform her past work as actually performed. Tr. 25-26. The ALJ stated that such was consistent with plaintiff's testimony at the

---

[2] When evaluating plaintiff's work as performed, the VE stated, "In testimony today [plaintiff] said she didn't have to support her client's weight when they started to fall." Tr. 55-56. However, the VE's understanding directly contradicts with plaintiff's previous statements ("if he started to fall, I would help to keep him from falling;" "just if he tried to fall, I would take on his weight." Tr. 40.).

hearing that she performed the job at the sedentary level in terms of being able to lift up to ten pounds and stand for 10 to 20 minutes before resting. Tr. 25-26. The ALJ noted that the plaintiff's "current use of a cane would not preclude the performance of sedentary work, as there is no evidence in the record that she does not ambulate effectively with her cane." Tr. 26.

The ALJ's conclusion that plaintiff's job as performed was sedentary is not reasonable. Although plaintiff wrote in her Functioning Report that the heaviest she lifted was ten pounds and frequently lifted less than ten pounds, the ALJ did not reconcile this with plaintiff's testimony that she had to keep her client from falling, and that she would take on her client's weight when the client started to fall. Tr. 25-26. The ALJ did not consider hypotheticals where the plaintiff had to support more than 10 pounds if her client started to fall.[3] The ALJ did not provide a reason for dismissing this testimony. Tr. 25-26.

The Court concludes that the ALJ failed to provide sufficient clear and convincing reasons for discounting plaintiff's testimony and further concludes that the error was harmful.

## III. Remedy

For the reasons set forth above, the Court concludes that the ALJ's decision contains harmful errors and must be reversed and remanded. The decision whether

---

[3] The ALJ also did not reconcile how plaintiff would be able to catch her client if the client started to fall or assist the client with ambulation while plaintiff was using her prescribed cane. Furthermore, the ALJ did not reconcile the VE's comments that a person using a cane, and therefore only having one free extremity, would be unable to work as a home attendant. Instead, the ALJ only mentioned that plaintiff herself does not have a problem ambulating with her cane.

to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Triechler v. Comm'r*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted).

On review of the record, the Court concludes that this case is not appropriate for an immediate award of benefits and that the proper resolution is a remand for further proceedings. On remand, the ALJ should (1) reassess plaintiff's subjective symptom testimony and either credit that testimony or provide clear and convincing reasons for discounting it; and (2) reassess the exertion level of plaintiff's job as performed.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

It is so ORDERED and DATED this ____12th____ day of September 2023.

                                          /s/Ann Aiken
                                          ANN AIKEN
                                          United States District Judge